IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JACQUELINE D. LEWNES,

    Plaintiff,

v.                                                               1:18-cv-00275-LF

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Jacqueline D. Lewnes's Motion to Reverse or Remand for a Rehearing with Supporting Memorandum (Doc. 17), which was fully briefed on October 16, 2018. *See* Docs. 19, 20, 21. The parties consented to my entering final judgment in this case. Docs. 4, 7, 8. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") improperly rejected the opinion of Ms. Lewnes's treating therapist, Rose Wolfenbarger, LPCC.[1] I therefore GRANT Ms. Lewnes's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

    **I.**     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Licensed Professional Clinical Counselor.

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Lewnes was born in 1966, earned a bachelor's degree in fine arts, and worked for many years running her own housecleaning business (working approximately eight hours per week). AR 39, 190, 225.[4] Ms. Lewnes filed an application for disability insurance benefits ("DIB") on September 24, 2014 and an application for supplemental security income ("SSI") on

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 12-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

November 6, 2014, alleging disability since December 16, 2012 due to post traumatic stress disorder ("PTSD").  AR 190–92, 192–97, 224.[5]  The Social Security Administration ("SSA") denied her DIB claim initially on February 14, 2015.  AR 122–26.  The SSA denied her DIB claim on reconsideration on July 7, 2015.  AR 130–32.  Ms. Lewnes requested a hearing before an ALJ.  AR 144–45.  On February 3, 2017, ALJ Michael Leppala held a hearing.  AR 31–102.  ALJ Leppala issued his unfavorable decision on May 3, 2017.  AR 7–23.

The ALJ found that Ms. Lewnes met the insured status requirements of the Social Security Act through December 31, 2018.  AR 12.  At step one, the ALJ found that Ms. Lewnes had not engaged in substantial, gainful activity since December 16, 2012, her alleged onset date.  *Id*.  At step two, the ALJ found that Ms. Lewnes's PTSD and depressive disorder were severe impairments.  *Id.*  The ALJ found that Ms. Lewnes's right knee injury was a non-severe impairment.  *Id*.  At step three, the ALJ found that none of Ms. Lewnes's impairments, alone or in combination, met or medically equaled a Listing.  AR 13–14.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Lewnes's RFC.  AR 14–17.  The ALJ found Ms. Lewnes had the RFC to do the following:

> lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; standing and/or walking for about 6 hours in an 8-hour workday, and sitting for about 6 hours in an 8-hour workday, with normal breaks.  She can respond appropriately to supervision, coworkers, and work situations, deal with routine changes in work setting, and maintain concentration[,] persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday.  The Claimant is limited to occasional interaction with the public and frequent interaction with coworkers.

AR 14.

---

[5] For reasons that are unclear to the Court, the SSA only moved forward with Ms. Lewnes's DIB claim.  Despite Ms. Lewnes's application for SSI, there do not appear to be any other documents in the record referencing her SSI claim.

4

At step four, the ALJ concluded that Ms. Lewnes's prior work as a housecleaner did not meet the "recency, earnings, and duration requirements of past relevant work." AR 17. The ALJ concluded that Ms. Lewnes was not capable of performing any past relevant work because she did not have any past relevant work. *Id.* The ALJ found Ms. Lewnes not disabled at step five because she could perform jobs that exist in significant numbers in the national economy, such as kitchen helper and hospital cleaner. AR 17–18. On May 8, 2017, Ms. Lewnes requested that the Appeals Council review the ALJ's unfavorable decision. AR 189. On January 23, 2018, the Appeals Council denied the request for review. AR 1–6. Ms. Lewnes timely filed her appeal to this Court on March 23, 2018. Doc. 1.[6]

IV. **Ms. Lewnes's Claims**

Ms. Lewnes raises two arguments for reversing and remanding this case: (1) the ALJ improperly rejected the opinion of her treating therapist, Rose Wolfenbarger, LPCC ("LPCC Wolfenbarger"); and (2) the ALJ failed to properly consider the opinion of her treating physician, Dr. B.J. Davis. *See* Doc. 17. I find that the ALJ erred by failing to properly consider the opinion of LPCC Wolfenbarger. Because I remand based on the ALJ's failure to properly analyze this opinion, I do not address the other alleged error, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

V. **Analysis**

A. The ALJ failed to properly consider the opinion of treating therapist, LPCC Wolfenbarger.

---

[6] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 2.

5

Ms. Lewnes argues that the ALJ erred in not discussing what weight he gave LPCC Wolfenbarger's opinion. Doc. 17 at 17. She further argues that the reasons the ALJ gave for "dismissing" LPCC Wolfenbarger's opinion are not valid. *Id*. at 17–18. The Commissioner responds that "the ALJ gave good reasons for discounting [LPCC Wolfenbarger's] extreme opinion[s]" and urges the Court not to disturb the ALJ's decision. Doc. 19 at 8. For the reasons discussed below, I agree with Ms. Lewnes.

LPCC Wolfenbarger is considered an "other source" under the regulations. *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).[7] An "other source" cannot give a "medical opinion," cannot establish the existence of a medically determinable impairment, and is not considered a "treating source[]." *Id*. However, "other source" opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. Opinions from "other sources" are weighed using the same factors used to weigh opinions from acceptable medical sources. *Id.* at *4–*5; *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the [other source's] opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the [other source] is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citation omitted); 20 CFR §§ 404.1527(c), 416.927(c) (both effective March 27, 2017). The ALJ "should explain the

---

[7] SSR 06-03p was rescinded "for claims filed on or after March 27, 2017." *See* Federal Register Notice Vol. 82, No. 57, p. 15263, effective March 27, 2017. Ms. Lewnes filed her claim in 2014, making SSR 06-03p applicable to her case.

weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6.

In *Frantz*, the Tenth Circuit held that an ALJ erred by not discussing what weight he gave an "other source" opinion on the severity and functional effects of the claimant's limitations. 509 F.3d at 1302. It also is error for an ALJ to ignore evidence from an "other source" which would support a finding of disability, "while highlighting evidence favorable to the finding of nondisability." *Id.*; *see also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

In this case, LPCC Wolfenbarger, who treated Ms. Lewnes at least 189 times between 2013 and 2017, AR 428, completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) on March 27, 2015, in which she opined that Ms. Lewnes had the following limitations:

Understanding and Memory

- Marked limitation in the ability to remember locations and work-like procedures;
- Marked limitation in the ability to understand and remember very short and simple instructions;
- Marked limitation in the ability to understand and remember detailed instructions.

Sustained Concentration and Persistence

- Marked limitation in the ability to carry out detailed instructions;
- Marked limitation in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance;

7

- Marked limitation in the ability to work in coordination with/or proximity to others without being distracted by them;
- Marked limitation in the ability to complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- Moderate limitation in the ability to carry out very short and simple instructions;
- Moderate limitation in the ability to maintain attention and concentration for extended periods of time (i.e. 2-hour segments);
- Moderate limitation in the ability to sustain an ordinary routine without special supervision;
- Moderate limitation in the ability to make simple work-related decisions.

Social Interaction

- Marked limitation in the ability to interact appropriately with the general public;
- Marked limitation in the ability to ask simple questions or request assistance;
- Marked limitation in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Marked limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Marked limitation in the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.

Adaptation

- Marked limitation in the ability to respond appropriately to changes in the workplace;
- Marked limitation in the ability to travel in unfamiliar places or use public transportation; and
- Moderate limitation in the ability to be aware of normal hazards and take adequate precautions.

AR 397–98.

The ALJ did not state what weight he gave LPCC Wolfenbarger's opinion. Instead, the ALJ merely stated the following:

In three medical source statements in January 2017 and March 2015,[8] R. Wolfenbarger noted that the Claimant experienced poor appetite, feelings of worthlessness and difficulty with concentration. She further noted that the Claimant has fatigue, inability to relax and is easily startled. The therapist also noted the Claimant's impatience with the judgments/insensitive comments of others. [Sh]e concluded that Claimant had moderate and several marked restrictions. (Exhibits 6F, 8F, 9F, 11F). I considered that Ms. Wolfenbarger was a mental health specialist and Claimant's treating provider. However, she was not an acceptable medical source. Furthermore, her assessment appears overstated when compared to the Claimant's reported improvements with regular counseling. Her opinions are also inconsistent with the Claimant's work activity and volunteer [sic] with CASA, after the period when the claimant alleged she was disabled.

AR 16.

Ms. Lewnes argues that the ALJ erred in failing to state what weight he gave LPCC Wolfenbarger's opinions. Doc. 17 at 17. The Commissioner argues that "[w]hile the ALJ did not state exactly what weight he gave [LPCC Wolfenbarger's] opinion, the decision makes clear he discounted the extreme opinion." Doc. 19 at 7 n.6 (quoting *Oceguera v. Colvin*, 658 F. App'x 370, 374 (10th Cir. 2016) (unpublished) ("Though the ALJ did not expressly state the weight she gave to Dr. Klein's opinion, her language makes clear that she accorded it little to no weight. . . . Because we can ascertain the weight given and the reasons for that weight, we think the ALJ was 'sufficiently specific' in her discussion of Dr. Klein's opinion."). Here, unlike in *Oceguera*, it is not clear what weight the ALJ assigned to LPCC Wolfenbarger's opinion. Instead, as in *Frantz*, 509 F.3d at 1302, "the ALJ referred to some of the evidence gleaned from [the other source's] treatment notes but did not discuss what weight he gave to her opinion on the severity of [claimant's] limitations and on the functional effect those limitations have on her overall ability

---

[8] On March 27, 2015, LPCC Wolfenbarger completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) and Listings Forms 12.04 (Affective Disorders) and 12.06 (Anxiety Disorders). AR 397–400. On January 2, 2017, she again completed Listings forms 12.04 and 12.06. On February 28, 2017, she provided a letter discussing Ms. Lewnes's work attempt, which is not listed by the ALJ. AR 428.

to work. He ignored evidence from [the "other source"] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability." As in *Frantz*, this is error. *Id*.

Even if the Court assumed that the ALJ gave LPCC Wolfenbarger's opinion little to no weight, remand still is required. The first reason the ALJ gave for rejecting LPCC Wolfenbarger's opinion is legally incorrect. The second and third reasons he gave for rejecting LPCC Wolfenbarger's opinion are not "sufficiently specific," and are not supported by substantial evidence.

The first reason the ALJ gave for discounting LPCC Wolfenbarger's opinion was that "she was not an acceptable medical source." AR 16.[9] As discussed above, however, the fact that an opinion is from an "other source" is not a factor in deciding what weight to give that opinion. While an "other source" cannot give a "medical opinion," establish the existence of a medically determinable impairment, or be considered a "treating source[]," "other source" opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, at *2–*3. "Other source" opinions are to be weighed using the same factors used to weigh medical opinions. *Frantz*, 509 F.3d at 1302.

The second reason the ALJ gave for discounting LPCC Wolfenbarger's opinion—that "her assessment appears overstated when compared to the Claimant's reported improvement with regular counseling," AR 16—is not supported by any evidence. The Commissioner argues that "the ALJ found that Ms. Wolfenbarger's extreme opinion was inconsistent with her notes

---

[9] The Court reads this as part of the reason the ALJ discounted LPCC Wolfenbarger's opinion because the sentence following this one begins with "[f]urthermore," indicating that both sentences support the same conclusion. *See* AR 16.

10

showing that [Ms. Lewnes] was improving with regular counseling." Doc. 19 at 7. While the consistency of an opinion is a valid factor to consider in weighing an "other source" opinion, the ALJ did not point to any evidence that Ms. Lewnes sustained lasting improvement with regular counseling. Instead, the Commissioner draws the Court's attention to another part of the ALJ's opinion, in which he stated that:

> With treatment, the claimant's mental state has partially improved (Exhibit 5F, p. 10). In February 2015, her treating therapist, Rose Wolfenbarger, LPCC, noted that she did not 'seem to fit a disability candidate profile in the sense that she was still seeking growth (personal) in spite of her limitations so [I] wonder how this might complicate her process[.]" (Exhibit 5F, p.8).

Doc. 19 at 7–8 (quoting AR 15). The Court has reviewed Exhibit 5F, p.10 (AR 361), but does not see any indication of lasting mental improvement reflected there. LPCC Wolfenbarger noted on December 22, 2014 that Ms. Lewnes "Reviewed Goals & objectives—sees progress and wants to continue with both," and "Seems to be making healthy decisions for herself," but the notes don't indicate sustained progress beyond this entry. *See* AR 361. The Court also does not see how LPCC Wolfenbarger's statement that Ms. Lewnes did not "fit a disability candidate profile" is inconsistent with her opinion about Ms. Lewnes's limitations. Instead, this February 25, 2015 treatment note seems to indicate nothing more than the fact that Ms. Lewnes continued to try to improve, despite her limitations. The ALJ simply does not explain how these statements show that Ms. Lewnes improved with regular counseling. As such, the Court is unable to follow the ALJ's reasoning. "[T]he discussion of the evidence in the determination or decision [must] allow[] a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6.

In addition, LPCC Wolfenbarger's treatment notes repeatedly document the fact that Ms. Lewnes continued to suffer from significant mental health challenges. *See* AR 361, 12/10/14 ("Quit a couple of clients because saw them as disrespectful and uncooperative with her requests of them. Had few days did not leave apt., unsettles her when she feels like that."); AR 360, 2/17/15 ("Various challenges in life rt. now having to do with other people's mistakes and/or disrespect in one way or another. Feeling discouraged."); AR 360, 2/24/15 ("Helped her identify a safe place she can go to when she needs to."); AR 359, 3/24/15 ("flashbacks triggered increase cl[ient's] anxiety doesn't want to go anywhere."); AR 358, 5/6/15 (left a group event because she was "emotionally exhaust[ed]" and "triggered by a smell"); AR 357, 6/5/15 ("Didn't want to leave condo yesterday. . . Not trusting it seems . . . leading to [increased] stress, fears."); AR 357, 6/10/15 ("Reviewed her week couple esp. challenging days with anxiety & not being validated by people she encountered."); AR 389, 6/17/15 ("Said only thought of suicide 2xs this past wk."); AR 389, 6/26/15 ("maxes out at about 2 hours of exposure to people before feels need to get away from them and go home & hide."); AR 388, 7/8/15 ("Clear is only able to work 2 hours at a time."); AR 388, 7/15/15 ("Picture fell off wall where is pet sitting & glass broke [which] triggered cl[ient's] anxiety & agitation. Seems to look at new people for new opportunities presented from a hypervigilant perspective-from every possible angle she can think of looking for potential harm."); AR 388, 7/28/15 ("Seems hypervigilant in high gear."); AR 388, 7/31/15 ("Seems hypervigilant to the max last wk. or so—believing maintenance man at condo kept walking toward her, [people] in authority talking over her and/or interrupting, call police when homeless man on property, etc."); AR 386, 9/9/15 ("Rode on motorcycle to El Morro on Labor Day & was triggered by wind on her back [resulting in] memories of mom hitting the back of her head for no reason."); AR 386, 9/16/15 ("noticing where & when is off balance and/or triggered-

12

knows has limits re how long around people for ex[ample]."); AR 385, 9/30/15 ("Definitely seems challenged with PTSD symptoms."); AR 385, 10/2/15 (noting that Ms. Lewnes's hypervigilance causes cleaning job that used to take 3 hours to now take 6 hours); AR 385, 11/4/15 (noting anxiety attacks and excessive sleeping over the past week); AR 384, 11/18/15 (noting a "not very stable week" with lack of sleep and hypervigilance); AR 383, 12/8/15 (noting that Ms. Lewnes is "not able to clean houses much as takes more time than used to & can only handle a few hrs. at a time"); AR 383, 12/22/15 (noting increased reactivity, anxiety, and agitation); AR 382, 1/19/16 (noting that "3 hours is about what she can handle of the outside world"); AR 381, 2/9/16 ("Spent much of last 4 days at home, not wanting to venture out. Seems steps forward & steps backward."); AR 378, 4/12/16 (noted that she was getting "too angry too quickly" and was having "suicidal thoughts"); AR 377, 4/25/16 ("she can only w[or]k 3 hours at a time before she starts to go downhill—energy, tolerance, triggers, etc."); AR 376, 5/31/16 ("Seems easy for her to start downing/self blaming if interaction with someone doesn't go as expected."); AR 376, 6/10/16 ("triggered by for sale sign at her condo with it being against the rules"); AR 375, 6/14/16 ("Shooting in Orlando got to her, triggered her, 1st 2 or 3 days afterward spent a lot of time in bed . . . fear, not trusting people."); AR 375, 6/24/16 ("several anxiety attacks this week"); AR 374, 7/5/16 ("Got triggered by old time firecracker and then later by fireworks & gunshots while in her appt. on July 4th."); AR 370, 10/27/16 ("Challenges at work—supervisor lying, peers not supportive, bored with parts of it."); AR 370, 10/31/16 ("Finds self feeling anxious before goes into work. Could be PTSD symptoms related to not feeling accepted & safe at work—time will tell."); AR 369, 11/7/16 ("Bullied by 2 peers at work [so] gave her 2 week notice."); AR 369, 12/1/16 ("2 days ago depressed & stayed in bed most of

13

the day. Will figure out new coping strategy when doesn't have option to stay in bed because will be working.").

The ALJ fails to support his assertion that Ms. Lewnes improved with regular counseling with substantial evidence. As demonstrated above, LPCC Wolfenbarger's treatment records show that Ms. Lewnes continued to struggle with symptoms of PTSD throughout the treatment period. The two treatment notes referenced by the ALJ amount to no more than a scintilla of evidence and are insufficient. It is error for an ALJ to ignore evidence from an "other source" opinion which would support a finding of disability, "while highlighting evidence favorable to the finding of nondisability." *Frantz*, 509 F.3d. at 1302*.*; *see also Clifton,* 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

The third reason the ALJ gave for discounting LPCC Wolfenbarger's opinion—that her opinion is "inconsistent with the Claimant's work activity and volunteer[ing] with CASA," AR 16—also is not supported by substantial evidence. The "consistency between the opinion and the record as a whole" is a valid factor for the ALJ to consider in deciding what weight to give an "other source" opinion. *See Robinson*, 366 F.3d at 1082; 20 CFR §§ 404.1527(c), 416.927(c). The Court, however, is unable to follow the ALJ's reasoning as to how Ms. Lewnes's volunteer or paid work after her alleged onset date undermines LPCC Wolfenbarger's opinion. Ms. Lewnes argues that "the record does not bear out ALJ Leppala's assertion that LPCC Wolfenbarger's [opinion is] inconsistent with [her] work and volunteer activities, because both were short-lived and not representative of the ability to sustain full time work." Doc. 20 at 3. I agree.

Ms. Lewnes began training to volunteer with CASA in July of 2016, volunteered at one event and was assigned one client in August, and quit in September.  AR 371–73.  It is not clear how this short attempt at volunteering undermines LPCC Wolfenbarger's opinion.  Ms. Lewnes's work attempts were similarly short-lived and unsuccessful.  In August of 2016, Ms. Lewnes got a job doing "phone support" for approximately ten hours per week.  AR 372.  She started training for this job at the end of August 2016.  AR 372.  On September 7, 2016, Ms. Lewnes reported to her counselor that she was "liking her job [and] liking her coworkers."  AR 371.  On October 5, 2016, Ms. Lewnes reported to her counselor that she was "enjoying her work, [but was] tired by [the] end of [her] shift."  AR 370.  By October 27, 2016, however, Ms. Lewnes was reporting challenges at work and "feeling anxious before . . . work," and she called in sick to work.  AR 370.  On November 7, 2016, Ms. Lewnes reported being bullied by two peers at work, and she gave her two-week notice to quit.  AR 369.

Ms. Lewnes attempt to work for the United States Post Service ("USPS") was similarly short-lived and unsuccessful.  At the time of the ALJ hearing, Ms. Lewnes had been working for the USPS for two weeks as a substitute mail carrier.  AR 42.  She testified, however, that she took twice as long to complete her mail route than what was expected, and that she mis-delivered a lot of mail on her route.  AR 42–43, 86.  She was overwhelmed, anxious, and afraid of being fired.  AR 42, 51, 54, 82.  Ms. Lewnes testified that she was not sure she could succeed at a job that did not allow her time to regroup or reschedule as necessary, or one that required more than three hours of work at a time, or one that required her to work with people.  AR 72, 86.  Less than a month after the hearing, Ms. Lewnes submitted an affidavit stating that she had resigned from her job on February 8, 2017.  AR 291.  She resigned because she thought she was going to be fired, and she wanted to "preserve [her] dignity."  AR 291.  On February 28, 2017, LPCC

Wolfenbarger wrote a letter opining that Ms. Lewnes's PTSD was the root cause of her resignation:

> She has had at least one traumatic experience that involved the threat of actual death or serious injury. As a result, with PTSD, people, situations, thoughts and perspectives can trigger psychological and/or physiological reactivity and people with that diagnosis, including Jacqui, do their best to avoid being exposed to anything that might trigger them. She also wakes up a lot, is irritable and has outbursts of anger, difficulty concentrating, hyper-vigilance and an exaggerated startle response.
>
> All of these symptoms [a]ffect her ability to feel safe, trust and retain information.
>
> Since she started working at the Post Office these factors have come into play. . . .

AR 428. The ALJ did not discuss LPCC Wolfenbarger's letter.

The ALJ offers no explanation of how Ms. Lewnes volunteer and work attempts are inconsistent with LPCC Wolfenbarger's opinion. The Court sees no obvious inconsistency. If anything, Ms. Lewnes's short-lived attempts at volunteering and working after her onset date appear to show that she was not capable of maintaining sustained, gainful employment. This is consistent with LPCC Wolfenbarger's opinion. Absent a fuller explanation of how Ms. Lewnes's volunteer and work attempts show that she is not as limited as LPCC Wolfenbarger concluded, the Court is unable to conclude that the ALJ's opinion is supported by substantial evidence.

Finally, the Commissioner argues that "the ALJ gave good reasons for discounting [LPCC Wolfenbarger's] extreme opinion, [and that] the ALJ's decision should not be disturbed on review." Doc. 19 at 8. The Court does not agree. The cases the Commissioner cites are distinguishable. Unlike *Keyes-Zachary*, 695 F.3d at 1163, the Court is unable to "follow the adjudicator's reasoning." And, unlike *Snowden v. Berryhill*, 17cv232 CG, 2018 WL 443498, at *5−*6 (D.N.M. Dec. 16, 2018) (unpublished), the ALJ failed to give good reasons supported by

16

the record for rejecting the "other source" opinion. This case is remanded so that the ALJ can explain how he weighed LPCC Wolfenbarger's opinion, and the reasons for that weight.

## VI. Conclusion

The ALJ erred in failing to explain the weight he gave to LPCC Wolfenbarger's opinion. The Court remands so that the ALJ can explain how he weighed LPCC Wolfenbarger's opinion, using the proper regulatory factors. The Court does not reach Ms. Lewnes's other claimed error, as it "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 17) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent